*Northern District*

No. 4771

**BANLY'S INC.**

**v.**

**FRANK J. EAGAN**

(October 6, 1954)

*Enos, J.* By this action of contract the plaintiff seeks to recover a deficiency alleged to be owed it by the defendant under a conditional sale contract.

The defendant, in addition to a general denial, denied the existence of the plaintiff corporation and the genuineness of his signature and requested proof of both; alleged that the food delivered was not edible; that the plaintiff agreed to remove the freezer and food, cancel the written contract and return to the defendant the money that he paid, upon complaint that the food was not edible.

By a replication the plaintiff denied all of defendant's allegations.

*There was evidence introduced at the trial* that on or about January 13, 1953, the parties entered into a written conditional sale contract, a copy of which is annexed to the report.

The part of the contract referring to the merchandise reads as follows:

"Undersigned Seller hereby sells and undersigned Buyer hereby purchases subject to the terms and conditions hereunder and on the reverse side hereof set forth, the merchandise described below, delivery of which complete and in the condition indicated is hereby acknowledged by the Buyer, to be kept at the above address.

| Descr. of Appl. | New or Used | Model | Serial No. |
| --- | --- | --- | --- |
| United | New | UF 15 | 599.95 |
| Food Plan | | | 182.08" |

The rest of the contract provides for the monthly payments and terms of conditional sale not here material. The contract itself is not dated. It bears the signature of the defendant and of the plaintiff, and under the latter's name, the name of "Betty Fritz, Bookkeeper". A separate paper admitted as Exhibit 2 is also annexed to the report. It is dated January 6, 1953 and is in the form of an invoice as "sold to" the defendant's name and listing a quantity of food totalling $182.08.

At the bottom of the invoice there appears this receipt:

"Received Above Food Plan

   (ss) Mary J. Eagen"

The defendant only paid one monthly payment on the contract besides the down payment of $59.95. Many demands for payment were made, and on September 3, 1953 a written demand was made on the defendant, and on October 9, 1953 the freezer was repossessed by the plaintiff and sold. The costs of repossession and sale amounted to $203.39.

There was also evidence by the defendant that out of the $182.08 for food, about $20.00 worth was not edible; that he complained to plaintiff's salesman a week after the delivery of the food that although there was nothing wrong with the freezer, he was not satisfied with the quality of food, some being unfit for human consumption. He requested plaintiff to pick up the freezer and food on many occasions. By the time the freezer was repossessed all the edible food had been consumed.

After these complaints plaintiff's salesman, Mr. Kelley, told the defendant: "Hold tight. Don't do anything till you hear from me." That these complaints were made to the plaintiff "again and again once a month" and on first complaint Mr. Kelley said "they would take the freezer out." Kelley terminated his employment with the plaintiff in May, 1953.

The defendant's wife was asked to explain what the Food Plan was. She replied, apparently without objection by the plaintiff, that "at any time before four months, if we were not satisfied with the quality of the food the plaintiff would remove the freezer and food."

The plaintiff filed and the trial judge denied the following requests for rulings:

"3.  That the evidence warrants the following specific findings:

c. The merchandise delivered was as ordered by the defendant.

d. The defendant did not make payments as required by the contract.

e. Under the terms of the contract the plaintiff had a right to repossess the freezer because of the breach of contract by the defendant.

f. The plaintiff repossessed the freezer and sold on behalf of the defendant in accordance with terms of the contract.

g. The plaintiff sold the freezer after repossession for $400.00 which was a fair and reasonable price.

h. The costs involved in repossessing and selling the freezer were reasonable.

i. Under the terms of the contract the plaintiff is entitled to collect for attorney's fees in the amount of 15% in the event that it becomes necessary to place the contract in the hands of an attorney after default.

j. The defendant owes the plaintiff $525.95 together. (sic.)

k. The plaintiff performed all conditions required to be performed on its part by the contract."

The Court made the following findings of fact:

"This is an action for damages for breach of contract. The parties to this action entered into a contract whereby the defendant purchased from the plaintiff a United "freezer" and a Food Plan for the total sum of $854.03, including the finance charge; these two items were treated as one and inseparable. Evidence was introduced as to what the Food Plan was. I find that the Food Plan was as follows: a) the plaintiff would supply defendant with certain types of food; b) the defendant could cancel the contract if within four months he was not satisfied with the quality of food so supplied by the plaintiff; c) the plaintiff would return to

defendant all money paid by the defendant to the plaintiff excepting as to food actually consumed; and, d) the freezer would be surrendered to the plaintiff.

This evidence was introduced to explain what the Food Plan was and not to change the terms of the written contract.

The defendant made a deposit of $59.95 at time of contract was entered into besides paying the first installment of $71.52. Six or twelve days later defendant notified plaintiff that he was not satisfied with the quality of the food, that some food was not fit for human consumption, that he was surrendering to them the freezer and cancelling the contract. The food actually used by the defendant was about $162.08. About nine months later the plaintiff took back the freezer.

I find that defendant exercised his right to rescind the contract in accordance with their agreement on the Food Plan, but that the food consumed by defendant exceeded the money paid plaintiff under the contract by $30.61 and I find for the plaintiff in said amount."

The report states that it contains all the evidence material to the questions reported.

The plaintiff claims to be aggrieved by the denial of its requests for rulings, by the admission of the evidence of defendant's wife as to what was the Food Plan, and by the finding of the Court.

We treat as waived the question raised by the defendant's answer as to the existence of the plaintiff as a corporation, as he has made no request covering that question. G. L. (Ter. Ed.) c. 231, §30.

As it does not appear that the plaintiff complied with Rule 27 of the Rule of District Court (1952) in claiming a report at the time of the admission of the evidence of the wife as to what was the Food Plan, and in reducing it to writing in a summary manner and filed with the clerk within five days after its admission, this question is not properly be-

fore us. *Gibbons v. Denoncourt*, 297 Mass. 448, 454, 455; *Okin v. Sullivan*, 307 Mass. 227, 228.

We think, however, that without some oral evidence it would be impossible to interpret the conditional sale contract. While all the parties seem to agree that it provided for a sale of a Food Freezer and some food, these articles are nowhere mentioned therein. As quoted above the articles described are "United" and "Food Plan". The explanation of these words was given by the defendant's wife.

This contract fails to meet the requirements of c. 509, §§1 and 2 of the Acts of 1939, as amended by c. 285 of the Acts of 1941, and c. 410 of the Acts of 1943, embodied in G. L. c. 255, §§12 to 13f, inclusive, in several particulars.

1.   It does not include a description of the property to be sold to the vendee, but only the words "United" and "Food Plan". Section 12.

We are unable to find that a "Food Plan" can be a subject of conditional sale.

2.   There is no evidence that a copy of the contract was furnished to the vendee at the time of its execution. Section 13.

3.   There is no evidence what the written demand made on September 13, 1953 contained, so we cannot find that the defendant was furnished with an itemized statement of the account then due. Section 13c.

4.   The articles intended to be sold are not embodied into a single contract, as it appears to be in two parts; one already mentioned undated and signed by the defendant; the other being the list of the articles of food dated January 6, 1953 signed by the defendant's wife, but admittedly received on a date subsequent to the contract, Section 12.

5.   There is another ambiguity with respect to a promissory note being executed in this transaction the words "is/is not" are both left in, one or the other not having been crossed out. Section 12.

Finally the plaintiff's third request could not be granted since it is a request for findings of facts, based on the assumption of facts which were not found by the trial judge, or based on other facts of which there is no evidence in the report. See *Simpson v. Eastern Mass. St. Ry.* 292 Mass. 562; *Gibbons v. Denoncourt*, 297 Mass. 448, 452.

There being no prejudicial error the report is to be dismissed.

Merrit Lipsky, for the plaintiff.

Charles V. Hogan, for the defendant.